THE STATE on the relation of DUNN, Auditor of State, *v.*
HAMILTON, Auditor of *Marion* county.

The list of "stock" required by the R. S. 1852 (1 R. S. 1852, pp. 113,
114, 115,) to be furnished by the president, secretary, agent or other ac-
counting officer of every railroad, plankroad, turnpike-road, slackwater
navigation, telegraph and bridge company in this state, to the auditor of the
county where their principal office is situated, for taxation, is not the sub-
scriptions of stock, but the actual, tangible property of such company.

If the company does not furnish such list by the first of *June* in any year, its
right to furnish the list ceases, and it is incumbent upon such auditor to
make it.

For the purpose of compelling the auditor, by writ of *mandamus,* to make out
such list, upon the failure of any such company to furnish the same within
the period prescribed by the statute, any citizen may be a relator.

The auditor of state, however, being more specially charged with the manage-
ment of the finances of the state, is a peculiarly appropriate relator.

*Tuesday,*
*November 28.*

APPEAL from the *Marion* Circuit Court.

PERKINS, J.—On the 22d day of *December,* 1853, *John
P. Dunn,* auditor of state, made affidavit that the *Peru and
Indianapolis Railroad Company* had failed to furnish to
the county auditor of *Marion* county, being the county in
which the principal office of said company was situated, a
statement of the property of said company, as required by
the provisions of the act for the assessment of taxes; and,
further, that the auditor of said county had also failed to
prepare such statement, to supply the omission on the part
of said company, as by statute he was required to do.

The affidavit was filed in the office of the clerk of the
*Marion* Circuit Court, and upon it a *mandamus* was moved
for, directed to the auditor of *Marion* county, commanding
him to prepare the statement, &c., or show cause, &c.

Pursuant to the motion, an alternative *mandamus* was issued, to which the defendant, the auditor aforesaid, made return, showing that on the 7th of *October*, 1853, said company furnished to him a list of her property, with which he was satisfied, which list was given as a correction and in lieu of a former erroneous statement, being the only one previously furnished, made the 4th day of *June* preceding.

The plaintiff replied that said original and corrected statements were both nullities, because not made in time; and that they were both false and not correct lists of the property of said corporation.

The cause was submitted to the Court upon the pleadings and evidence adduced, and a peremptory *mandamus* was refused. The plaintiff appealed to this Court.

The sections of the statute upon the construction of which the decision of this cause must depend, are in the 1 R. S. 1852, pp. 113, 114, 115, and read as follows:

"Sec. 32. It shall be the duty of the president, secretary, agent, or other proper accounting officer of every railroad, plank-road, turnpike-road, slackwater navigation, telegraph, and bridge company in this state, to furnish to the auditor of the county where their principal office is situated, a list of all the stock in said company, and its value, attested by the oath of the officer making the same, and shall furnish a statement dividing the aggregate amount of all the stock of such company among the several counties, in proportion to the value of the superstructure, buildings and real estate of such company in each county; and if any such company shall not have in this state its principal office for the transaction of its financial business, it shall be the duty of the president, cashier, secretary, treasurer, engineer or constructing agent of such company, to furnish to the auditor of the county where the work first enters the state, a statement under the oath or affirmation of the officer making it, specifying the amount and value of all real estate owned by such company within this state, the amount expended in the construction of said work within the lines of this state, and the amount invested in machinery and rolling stock of every kind; which said

machinery and rolling stock shall be assessed for taxation in the same proportion to its total amount that the length of line of the work in this state, completed, bears to the entire length of the line of said work completed.

"Sec. 33. It shall be the duty of such auditor to enter the name of such company or corporation on the tax-duplicate, with the amount and value of said stock, and assess thereon for state, county, school, and road taxes, according to the amount of taxes fixed for those purposes for that year in the several counties through which such road, slackwater navigation or telegraph line may run or pass, and the said president or other proper officer of any such company, shall pay to the treasurer of the proper county the taxes so assessed as aforesaid, on said stock, together with all damages, interest and costs, that may be due thereon.

"Sec. 37. If any such companies shall fail or refuse to furnish the statement required by this act, by the first of *June* in any year, the proper county auditor shall proceed to make out such list from the best information he can obtain; and in doing so, he shall be governed by the provisions of the twenty-fourth and twenty-fifth sections of this act."

Upon these sections two principal questions arise:

1. How is the list of property mentioned to be made? What is to be taken for the stock of the company?

2. When must said list be furnished to the county auditor?

It is claimed by the railroad company that the list is to include only cash subscriptions of stock, so far as they may be paid out, and that they are to be listed at their market value; while, on the other side, it is insisted said list must embrace all the property of the corporation except the subscriptions of stock.

We are not insensible of the importance of the question, both to the state and the numerous railroads in it, in a financial point of view, and we freely acknowledge the difficulty we have experienced in arriving at the meaning of the sections above quoted. The vague and confused

manner in which they are framed, is apparent to every one who reads them, and we have been able to find no construction that we could give them which would be unattended with injustice.

The word stock is used, both in common parlance and statutory enactments, in a variety of senses, some broader, some more limited. Its use may open a wide field for the work of interpretation, and require a close consideration of the whole subject-matter in relation to which it is applied. We speak of the goods of a merchant, as his stock; of the lumber and materials of the manufacturer, as his stock of raw materials; of the cattle, hogs, &c., of the farmer, as his stock; of the cars, locomotives, &c., of railroad companies, as their stock of these articles respectively; and we speak of the subscriptions and shares in these companies as stock, though these are more properly, it would seem, denominated the capital stock of such corporations. How, to what, did the legislature apply the term in enacting the sections of the statute above copied? This is the question. We will first examine the thirty-second section. It provides that "it shall be the duty" of every railroad company in the state to furnish "a list of all the stock in said company, and its value." This part of the section applies to all railroad companies having any portion of their roads in this state—to all roads and parts of roads that are taxable in the state, no matter where the principal office of the company may be situated. This is plain, because, after directing generally that the statement shall be furnished to the auditor of the county where the principal office is situated, the section proceeds, "and if any such company," that is, any of those named in the first part of the section, being all the companies having roads or parts of roads in the state, "shall not have in this state its principal office," it shall be the duty, &c., to furnish, not to the auditor of the county where might be its principal office, because he would not be in the state, but to the auditor of the county where the work first enters the state, who would probably be the auditor nearest and most convenient to the principal office, a list, &c. Here the section

might have terminated, and been complete; but instead of doing so, it proceeds to define, in the case of a railroad company not having its principal office in the state, what the list of stock is to be composed of, viz., the real estate, amount of money invested in construction, in machinery, &c., which machinery, &c., "shall be assessed for taxation," &c.

Let us now look at the thirty-third section. It provides for the entering upon the tax-duplicate of the names of those corporations, indiscriminately, which have, and have not, their principal offices in the state, "with the amount and value of said stock" returned by them, respectively, under the 32d section, and directs the auditor to assess on said stock, and the companies respectively to pay "on said stock," the taxes for state, county, school, and road purposes.

Here, then, in the two sections providing for the assessment of taxes upon these corporations, the legislature have unquestionably used the word "stock" some three or four times as embracing real estate, rolling stock—in short, all the property of the corporation; and we think, considering the connection in which it is found, that such application of the term may fairly be taken as an exposition, by the legislature itself, of the sense in which it is to be understood generally in those sections. Indeed, it must be so taken; for it can not be supposed that the legislature intended to tax the two classes of roads upon different and unequal principles. But any other rule of interpreting the meaning of that word, in those sections, would involve the necessity of such a supposition. If the value of the lands, rolling stock, road track, &c., of one class of these companies, is to be taxed, so must it be of the other class. The presumption is not to be indulged, unnecessarily, that the legislature would attempt to violate its duty and commit injustice.

Section 37 bears but slightly on the subject, but so far as it goes, it favors the construction we have adopted. It provides, that if any company fails to furnish the required list of stock, "the proper county auditor shall proceed to

make out such list from the best information he can obtain," &c. How would the auditor make a list of anything but the property, the cars, locomotives, real estate, &c., of the company? We are referred to section 39, p. 115, of the tax act in question. That section has nothing to do with the assessment of the taxes, but fixes the rule of adjustment between the company and the stockholders in deducting the tax paid; and the shares of stock upon the books, owned respectively by the holders, would furnish the correct proportion. The language of the section certainly favors a construction of the former sections different from that the Court has adopted, but not being directly upon the subject of the assessment of the taxes, it can not have so great weight as to give it a controlling influence over the meaning of those sections.

Other considerations weigh in favor of the view we have taken, and are entitled to consideration in a case which the language of the statute applicable to it leaves not entirely free from doubt.

The first section of article 10 of the constitution declares, that "The general assembly shall provide, by law, for a uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only for municipal, educational, literary, scientific, religious, or charitable purposes, as may be specially exempted by law."

The tax law under consideration was enacted by the legislature with this constitutional provision before them; and with it, it was their duty to comply, and, hence, we must presume it was their intention to do so. Now, an enactment providing for taxing railroad companies in the manner the defendant contends they are to be taxed under the present law, viz., by simply assessing their cash subscriptions, or, indeed, all their subscriptions of stock, at their value, or at their face, even, would be far from a compliance with this constitutional mandate. Such an act would not prescribe such regulations as should "secure a just valuation for taxation of all property," &c. For

example. A railroad company procures subscriptions of stock to the amount of 100,000 dollars. The line of the road is regarded as a favorable one, capitalists have confidence in it, and are willing to extend a credit to the company, of which it avails itself, and purchases and brings into the state property to the value of half a million of dollars. Now, simply taxing the 100,000 dollars of stock at what it might be worth, or at par, even, would tax but one-fifth of the property of that company.

Again. Simply taxing the stock subscriptions of a corporation might never tax its accumulation of profits. A company has a charter for a road a hundred miles long. It procures subscriptions of stock sufficient to build and stock fifty miles of the road. It collects them and builds the fifty miles and commences running upon them. The profits pay 6 per cent. dividends and leave a surplus which is applied to the construction of the remaining fifty miles. Now, when they are completed, the company has a hundred miles of road, with a capital stock only to the value of fifty miles, and taxing that stock at its face, would tax but half the property of the company. These examples are taken from cases that have actually occurred. In fact, there is not, probably, a railroad in this state, or not more than one, whose stock subscriptions equal half of the value of the property of the company. Hence the struggle now making to restrict taxation to those stock subscriptions. The other mode of taxation proposed would tax no more than the property of the companies respectively, on the lists and valuations severally furnished by themselves, if fairly made; and they must, therefore, be aware that simply taxing their subscriptions of stock would tax less than their property, else they would be indifferent as to which mode was adopted.

Nor would a construction of the existing tax law by such a rule of assessment of railroad companies as is contended for by the defendant, render said law accordant with the spirit, at any rate, of the sections of the constitution quoted, in another particular, which is, that the rate of assessment and taxation must be equal and uniform;

for that law expressly taxes all the property of individuals, manufacturing and mercantile companies, whether paid for or not; and indebtedness can not, under the law, in their cases, be deducted from the value of their property. See the tax law, *passim*, 1 R. S., p. 105. If, then, as the constitution declares, taxation is to be equal and uniform, corporations can not be exempted by law from the same rule of taxation to which individuals are subjected. Nor should they be. The protection of the government is extended alike to all within its jurisdiction, corporations included, and its burdens should fall with equal weight, as far as practicable, upon all within the same limits. We are told, in argument, that railroads greatly benefit the public. We admit it, and so do the men who go into the forests and open new farms and erect upon them good improvements. But neither, for this reason, can be favored specially by the taxing power of this state. Stockholders in railroads become such, not particularly from considerations of patriotism, nor from any compulsion, but voluntarily, and because they expect to profit by so doing, either from the roads directly, or through other interests which may be promoted by them.

We come, then, to the conclusion that it is not the stock subscriptions, but the actual tangible property of railroad companies that is to be listed for taxation. We come to this conclusion, because we think it best justified by the language, admitted to be vague and uncertain, of the sections of the statute providing for the tax; because it makes the operation of those sections equal upon the railroad companies, and uniform with the operation of other sections of the statute upon individuals, and, hence, most just and equitable; because it makes them consistent with the constitution, and, as we think, conformable to the intention of the legislature.

Still, as we have said, it does not obviate all their injustice. They provide that all the property of railroad companies shall be taxed at the principal office, or in a given county, and that the proceeds of the tax shall thence be distributed among the counties along the line of the road.

Now, the practice of receiving real estate subscriptions from all parts of the state, which, when conveyed to the companies, must be taxed at a particular office, and not in the counties where it lies, has been carried to so great an extent by our railroad companies, that many counties must be robbed, let the companies be taxed upon their stock subscriptions, or upon their visible property, of a considerable amount of their proper income from taxation. We say this result will follow, let either rule of listing contended for be adopted; for the law no where authorizes the taxation of the real estate belonging to these companies in the counties where it lies. Stock paid out with real estate is no less stock than if it had been paid out in cash.

This evil will, no doubt, be remedied by the legislature at its ensuing session. The next question is, when should the *Peru and Indianapolis Railroad Company* have returned a list of her taxable property to the auditor of *Marion* county?

The 37th section of the statute enacts, that if any company shall fail or refuse to furnish the list or statement, as it is indiscriminately termed, "by the first of *June* in any year," the proper county auditor shall proceed to make out the list.

The statute is plain. The company must furnish the list required by the first of *June*, or not at all. When the first day of *June* passes without a list from the company, her right to furnish it ceases, and the duty of making it is transferred to the auditor. He may undoubtedly receive, as matter of information to aid him in making a list, any statement the company may furnish after that time; but the list to be placed upon the duplicate must be prepared by the county auditor.

The question has been made and argued, whether, if the company make an incorrect list by the first of *June*, such list will take away the power of the auditor to supply a correct one. The statute requires the company to furnish a list of all the property, &c., and section 37 enacts that if the company fail, &c., to furnish "the list required by the act," by the time designated, the auditor, &c. Now, a partial, false list would not be the list of property required by

the act, and, hence, it would seem, should not prevent the auditor from preparing a correct one, but would rather render it incumbent upon him to do so. We do not, however, decide this point, it not fairly arising in the case.

The objection has been made that this *mandamus* could not issue on the relation of *John P. Dunn*, auditor of state. The assessment of the taxes for state purposes is a matter of public concern in which all the citizens of the state are interested; and hence, according to the case of *Hamilton* v. *The State*, in this Court, *November* term, 1852, (3 Ind. R. 452), any citizen of the state might have been the relator. At the same time, it was peculiarly appropriate that the prosecution should be upon the relation of the auditor of state, he being the officer more specially charged with the management of the finances of the state.

Upon the whole case we are satisfied the Court below erred in refusing a peremptory *mandamus*.

*Per Curiam.*— The judgment is reversed with costs. Cause remanded for further proceedings in accordance with this opinion.

*D. McDonald* and *R. L. Walpole*, for the state.

*L. Barbour*, *A. G. Porter*, and *S. Yandes*, for the appellee.