The Toledo & Wabash R. R. Co. v. The City of Lafayette.

THE TOLEDO & WABASH R. R. Co. v. THE CITY OF LAFAYETTE.

PRACTICE—INJUNCTION.—If illegal taxes are assessed and threatened to be collected, the appropriate remedy to restrain their collection is by injunction.

TAXATION—MUNICIPAL LAW.—Cities, organized under the general law of the State, are authorized to levy an *ad valorem* tax on all property within the cities respectively, and subject to State and county taxation.

TAXATION—RAILROADS.—A railroad company should be taxed, under the law as it now stands, for its "road" as an entirety, including all property in any way used by it in running or operating the road. But the real estate owned by a railroad company, or held by it in trust, and not used in running or operating the road, should be taxed in the same manner as the real estate of private individuals.

APPEAL from the *Tippecanoe* Common Pleas.

WORDEN, J.—Complaint by the appellant against the appellees, to restrain the collection of certain taxes assessed by the city against the company.

Demurrer to the complaint sustained. Exception and judgment for the defendants.

The complaint alleges, in substance, the following facts:

That the city of *Lafayette* is a municipal corporation under the general law of the State for the incorporation of cities, and that *Ridgely* is the treasurer and collector thereof; that the city, through her officers and agents, illegally, &c., assumed to assess a city tax against the plaintiff, in this, by assessing the lots and parts of lots, &c., occupied by the railway, switches, side-tracks, cattle guards, and depot grounds, separately, and as such lots as they originally stood in the several additions to the city; also assessing the road by the mile so far as it runs through the corporate limits of the city. A schedule of the assessment is set out, from which it appears that the plaintiff was assessed for lots and grounds, as such, in the

The Toledo & Wabash R. R. Co. *v.* The City of Lafayette.

sum of 116 dollars and 85 cents, and for 1½ miles of road bed in the sum of 41 dollars and 78 cents. It is averred that the lots, &c., are all parts of the railway property, and used for depot and other necessary railroad fixtures, erections and purposes, for convenience in transacting her railway business. The assessment in question was made for the year 1861, and an assessment on the like principle was made for the year 1862. It is further alleged that *Ridgely*, the treasurer, threatens to seize and levy upon the personal property to make the tax, &c. Prayer for injunction, &c.

If the taxes in question were assessed without authority of law, there can be no doubt that an injunction is a proper remedy to restrain the collection of them. *Greencastle Township* v. *Black*, 5 Ind. 557; *The City of Lafayette* v. *Jenners*, 10 Ind. 70.

This leads to the inquiry what taxes may be levied by a city incorporated under the general law, and in what manner are they to be levied. The 42d section of the act for the incorporation of cities, (1 G. & H. 228,) answers the first branch of the inquiry. It provides as follows:

"Sec. 42. The common council shall have power to levy, and cause to be assessed and collected, in each year, an *ad valorem* tax, of not more than 1 per centum, for general purposes, on all property subject to State and county taxation, within such city, and, also, a specific tax on omnibuses, or any carriages, and other vehicles used and run for passengers for hire, unless the same be licensed; and on each dog owned by any resident of such city, of not more than 2 dollars; and on each bitch owned by any resident of such city, of not more than 5 dollars; and, also, a poll tax, not exceeding 50 cents, on every male inhabitant, sane and not a pauper, of the age of twenty-one years, and not exceeding fifty years, residing therein."

By this provision, it will be seen that a city may levy an

The Toledo & Wabash R. R. Co. *v.* The City of Lafayette.

*ad valorem* tax on all property within the city subject to State and county taxation, as well as the specific tax mentioned. We have no inquiry to make here except as to the *ad valorem* tax; *that* can only be levied upon such property as is subject to State and county taxation.

In what manner is *ad valorem* tax to be assessed? The 21st section of the same act provides for the making out of a list of persons and property liable to taxation, by the assessor and his assistants, and declares that "such assessor and his assistants shall have the same powers, and be subject to the same provisions of the same law as the assessor of real and personal property for State and county purposes."

Thus, it is clear that it was intended by the legislature that cities, in the collection of an *ad valorem* tax, should not only be confined to such property within the city as is subject to State and county taxation, but that the same law should be observed in regard to the assessment thereof, as governs the assessment of property for State and county taxation. It was intended that cities, so far as an *ad valorem* tax is concerned, should be governed by the same system of assessment as that adopted for the time being for State and county taxation. And whatever changes may be made by the legislature in reference to the mode of assessment for State and county purposes, must also be adopted by the cities. *The Ontario Bank* v. *Brumell et al.*, 10 Wend. 186.

This makes it necessary to inquire how taxes are to be assessed for State and county purposes, against railroad corporations. On the 22d of *December*, 1858, an act was approved, amending the 32d section of the act of 1852, to provide for the valuation and assessment of real and personal property. 1 G. & H. 77. The original section, it may be observed, was the foundation, chiefly, of the decision of this Court, in the case of *The State* v. *Hamilton*, 5 Ind. 310. The amendment is as follows:

The Toledo & Wabash R. R. Co. *v.* The City of Lafayette.

"It shall be the duty of the president, secretary, agent, or other proper accounting officer of every railroad, plank road, turnpike road, slack water navigation, telegraph and bridge company in this State, to furnish to the auditor of the county where their principal office is situated, a list of all the stock in said company and its value, excepting therefrom all lands and their value held in trust or owned by said company that are not used in running or operating their said railroad, plank road, turnpike road, slack water navigation, telegraph or bridge, which list shall be attested by the oath of the officer making the same, and the said officer shall furnish a statement dividing the aggregate amount of said stock amongst the several counties, in proportion to the value of the superstructure, buildings and real estate owned and used by such company in operating and carrying on their said business in each county, and if any such company shall not have in this State its principal office for the transaction of its financial business, it shall be the duty of the president, cashier, secretary, treasurer, engineer, [or] constructing agent of such company, to furnish the auditor of the county where the work first enters the State, a statement under the oath or affirmation of the officer making it, specifying the amount and value of all real estate owned and used by such company in running and operating their said railroad, plank road, turnpike road, slack water navigation, telegraph or bridge within this State, the amount expended in the construction of said work within the lines of this State, and the amount invested in machinery and rolling stock of every kind, which said machinery and rolling stock shall be assessed for taxation in the same proportion to its total amount that the length of the line of the work in this State, completed, bears to the entire length of the line of said work completed, and all the lands owned or held in trust by any of the aforesaid companies, and not used by them in running or operating their

said railroad, plank road, turnpike road, slack water navigation, telegraph or bridge, shall be assessed for taxation, and the taxes collected in the counties where they severally lie, in the same manner and subject to the same rules and regulations that govern the assessment and collection of taxes on the lands of private persons."

On the day before the passage of the above amendment, the legislature passed an act to provide for the appraisement of real estate, and prescribing the duties of officers in relation thereto. Acts 1858, p. 4. The provisions of this act need not be here specially noticed. On the 4th of *March*, 1859, the 6th section of the act above cited was amended. 1 G. & H. 85. The amendment is as follows:

"Sec. 6. That it shall be the duty of the appraiser appointed in pursuance of this act, within ten days after their appointment, to proceed to list and appraise all the real estate in his county, subject by law to taxation, as follows, to-wit:

"*First.* The said appraiser shall, on actual view, make a true valuation of all lands, together with the improvements and buildings thereon, or affixed thereto, at their full value in money, as he would appraise the same in payment of a just debt due from a solvent debtor, taking into consideration the fertility and quality of the soil, the vicinity of the same to railroads, McAdamized roads, clay roads, turnpike roads, plank roads, State and county roads, cities, towns, villages, navigable rivers, water privileges on the same or in the vicinity of the same, the location of the route of any canal or canals, with any other local advantages of situation: *Provided,* That said appraiser shall also value all lands at their cash value, without taking into consideration any improvement that may be made thereon, and this valuation, as well as the valuation with improvements, shall be set down in proper columns provided for that purpose.

"*Second.* In-lots and out-lots in all towns, cities and villa-

The Toledo & Wabash R. R. Co. v. The City of Lafayette.

ges, with the improvements thereon, or affixed thereto, shall be valued at their true and full value in money, taking into consideration all the local advantages of situation. The said appraiser shall also, on actual view, make a true valuation of all lands, town lots, depot grounds and buildings and improvements thereon, other than road beds, switches and side tracks, and railroad tracks and superstructures thereon, used or held by railroad companies, according to the same rule herein prescribed for ascertaining the value of other real property, and he shall in the same manner make a true valuation of all lands and town lots, and buildings and improvements thereon, used or held by all McAdamized roads, plank roads, turnpike roads and canals, other than the *Wabash and Erie Canal;* and all toll bridges belonging to private persons or private corporations, to be valued upon actual view of the premises. The railroad companies of this State shall, on or before the first *Monday* in *April*, 1859, furnish to the appraiser of each county through which their respective roads may run, a written statement of the length of line in his county; also a written schedule of the number and description of all the rolling machinery of such company, or used by it upon such road in doing the business thereof, and the value of the same, in which shall be apportioned to each mile of said road the value of said rolling machinery; said schedule and statement to be verified by the superintendent or manager of such road. The appraisers of the counties through which any road may run, (provided it passes through more than one) shall, on the 2d *Monday* in *April*, 1850, meet at such point on the line of such road, as may be designated by the State Auditor, or in case he fails to designate such point, then at such point as may be agreed upon by such appraisers, and then appraise the value of said road per mile, through their respective counties, including in that valuation the value of all the rolling machinery aforesaid, depots, depot grounds and

machine shops.  In making such estimate of the value of such road, the appraisers shall take into consideration, in addition to the rule prescribed for the valuation of real estate, the location of such road for business, the competition of other roads, its earnings above current expenses and repairs, its condition for present and future business, so as to enable them to arrive at the actual present value of such road, independent of what it cost, or the amount of its indebtedness."

In determining the construction which should be placed upon the foregoing amendments, a question arises whether the latter repeals the former.  Wherein they are inconsistent, the former must be regarded as repealed by the latter.  If by the latter statute the legislature had attempted to cover the whole subject matter provided for by the former, the former should perhaps be regarded as repealed.  *The President, &c., of the Peru, &c., R. R. Co.* v. *Bradshaw*, 6 Ind. 146.

But there is one provision of the former statute that is in nowise inconsistent with the latter, nor is the subject matter of it covered by the provisions of the latter; and in respect to that provision the former law should, in our opinion, be regarded as unaffected by the latter.  We have reference to the latter clause of the amendment of 1858, which provides that, "all the lands owned or held in trust by any of the aforesaid companies, and not used by them in running or operating their said railroad, plank road," &c., "shall be assessed for taxation, and the taxes collected, in the counties where they severally lie, in the same manner and subject to the same rules and regulations that govern the assessment and collection of taxes on the lands of private persons."  It is necessary, it may be further observed, that this provision should be regarded as continued in force, in order to the perfection and harmony of the system of taxation contemplated by the legislation in question.

It will be seen at a glance that the system of taxation con-

The Toledo & Wabash R. R. Co. *v.* The City of Lafayette.

templated by these provisions is a very substantial departure from that adopted in 1852. Instead of taxing railroad companies as for stock, they are taxed, under the present system, as for real estate, or, in the language of the statute, as for the "road."

We think the following proposition may be stated as legitimate deductions from the statutes in question:

1st. A railroad company is to be taxed for its "road" as an unit, embracing not only the track, rolling machinery, side tracks and switches, but all depots, machine shops, &c., in short, including all property in any way used by it in running or operating the road. But whether such track of the road, where it runs through different counties, is to be regarded as of equal value, or whether it may be appraised differently in different counties, is a question not involved in this case and need not here be decided.

2d. Real estate owned by a railroad company, or held in trust and not used in running or operating the road, is to be taxed in the same manner as the real estate of private individuals. This is expressly provided for by the amendment of 1858, and is in entire harmony with that of 1859. It is also in harmony with the theory that every thing pertaining to the use and operation of the road is to be taxed unitedly as a road. Many railroad companies may yet have lands received on subscription to the capital stock of the company or otherwise, that have no connection whatever with the use and operation of the road, and there is no just reason why such lands should not be taxed as the lands of private persons. The appraisement of such real estate is amply provided for in the first part of the second clause of the amendment of 1859, and it is no where provided that such lands shall enter into the unit denominated the "road."

From this exposition of the statute it is clear that the city of *Lafayette* had no authority to assess the tax in question

upon the lots thus held and used by the company in operating her road. The assessment of the tax upon the road, so far as it runs through the city, exhausted her power in that respect, and a further assessment on the lots and lands as such was without authority of law. The demurrer to the complaint should have been overruled.

*Per Curiam.*—The judgment below is reversed, with costs.

*William Z. Stuart,* for the appellant.

*John Pettit,* for the appellee.