[No. 381.    July 24, 1891.]

## TOWN OF ALBUQUERQUE, Plaintiff in Error, v. CHARLES ZEIGER, Defendant in Error.

Taxation—Injunction—Compiled Laws, 1884, Title 28, Chapter 2—Construction of Statutes—Jurisdiction.—In a proceeding by bill in equity to enjoin the town of Albuquerque and the sheriff from the enforcement of a special assessment against the lot of complainant within the corporate limits of the town, to raise money to pay the expenses incurred by the municipal authorities in curbing and improving the street in front of the lot, made under sections 1622, 1635, title 28, chapter 2, Compiled Laws—Held, on demurrer: It does not appear from the record, and the bill impliedly denies, that two thirds of the owners to be charged with the expense petitioned the board of trustees for the making of the improvement. For this reason, among others, section 1635 of the statute can have no application in this case. By section 1622, the city councils and boards of trustees in

towns are authorized to establish and improve the streets, etc.; also "to provide for and regulate crosswalks, and curbs, and gutters," but the conferring of such powers does not grant to a city or town, either expressly or by necessary implication, the right to levy a special assessment, to pay the expenses of curbing a street, upon the lot abutting on the street where such curbing is done, nor upon the owner of such lot.

2. The complainant clearly had the right to resort to a court of equity. Such courts, when invoked, will entertain jurisdiction in all cases where taxes have been levied without authority of law.

ERROR, from a decree in favor of complainant, to the Second Judicial District Court, Bernalillo county. Decree affirmed.

The facts are stated in the opinion of the court.

W. H. WHITEMAN for plaintiff in error.

NEILL B. FIELD for defendant in error.

O'BRIEN, C. J.—Charles Zeiger, defendant in error, owns in the town of Albuquerque, a municipal corporation organized under the general laws of this territory, a part of lot 12, in block 18, of the New Mexico Town Company's addition to Albuquerque. This lot abuts upon Railroad avenue. In 1886 the town trustees passed a resolution providing for the improvement of this avenue by the construction of a stone curbing from the west side of First street to the east side of Fourth street, assessing $101.50 as a special tax upon the part of lot 12 owned by the defendant in error, as its proportionate share of the cost of such construction. This assessment, together with one for the general tax of that year, was placed in the hands of the sheriff, ex officio collector of taxes, to enforce payment thereof by sale of the lot in question or otherwise. Thereupon Zeiger tendered to the sheriff the full amount of the tax assessed and due for general municipal purposes, but refused to pay any part of the amount specially

assessed for the improvement of the street. The sheriff, as directed by the town, refused to accept the sum tendered, unless the special assessment was also paid, and proceeded to enforce the collection of the amount claimed by advertising for sale Zeiger's part of the lot before mentioned. To prevent this, Zeiger, on or about February 24, 1888, filed his bill in equity against the plaintiff in error and the sheriff, setting out in detail the several acts of the town in making the special assessment to pay the cost of constructing the stone curbing in front of his lot, alleging that the same was wholly unauthorized; that he had tendered to the sheriff $191.94 claimed for general purposes, before the same became delinquent, and that the latter refused to accept the same in default of the sum assessed for the improvements made upon Railroad avenue. He then alleges that he brings into court said sum so offered to the sheriff and tenders the same to plaintiff in error in discharge of all lawful taxes assessed against him. He further alleges that the defendant sheriff, as ex officio collector, is advertising his property for sale to pay the said taxes, and the said unlawful special assessment, and that the sheriff has threatened to sell and will sell said property unless restrained from so doing by order of the court; that, in case of such sale, a cloud will be cast upon his title to the property sold; "that he will be compelled to redeem the same at great expense, and will be unable to recover back the amount so wrongfully assessed against him, and will be otherwise irreparably damaged;" etc. Then follows prayer for general relief and the issuance of a writ of injunction. The defendants, town and sheriff, filed a general demurrer to the bill, which was overruled, the injunction prayed for issued, and defendants allowed to plead over. Refusing to do this, final decree was entered in favor of plaintiff, making the injunction perpetual. An appeal from such judgment was afterward taken,

but the same was not prosecuted. The case is here on writ of error sued out by the defendant town.

We will remark, with regard to the points raised by the defendant as to the right of plaintiff in error to concurrent remedies by appeal and writ of error, as well as to failure of the defendant sheriff to join in suing out such writ, that, they having been already decided against defendant in error, the only questions presented for determination now are: (1) The legality of the special assessment; (2) the right of the defendant in error to the relief sought in his bill. The provisions of law upon which plaintiff in error relies as authorizing its action in the premises are found in the following sections and subsections of title 28, chapter 2, of the Compiled Laws of 1884: "Section 1635. No street or highway shall be opened, straightened, or widened, nor shall any other improvements be made, which will require proceedings to condemn private property, without the concurrence in the ordinance or resolution directing the same of two thirds of the whole number of the members elected to the council or board of delegates, and the concurrence of a like majority shall be required to direct any improvement or repair of a street or highway, the cost of which is to be assessed upon the owners, unless two thirds of the owners to be charged therefor shall petition in writing for the same." "Section 1622. The city council and board of trustees in towns have the following powers: * * * Subsection 6. To contract an indebtedness on behalf of the city, and upon the credit thereof, by borrowing money or issuing the bonds of the city or town, for the following purposes, to wit: For the purpose of erecting public buildings; for the purpose of constructing sewers for the city or town; for the purpose of purchase or construction of waterworks for fire and domestic purposes; for the purpose of the construction or pur-

*Margin note: TAXATION: injunction: Comp. Laws, title 28, chap. 2.*

chase of a canal or canals, or some suitable system for supplying water for irrigation in the city or town; for the purpose of the construction or purchase of gas works for manufacturing illuminating gas, or purchasing illuminating gas; and for the purpose of supplying a temporary deficiency in the revenue for defraying the current expenses of the city or town. The total amount of indebtedness for all purposes shall not at any time exceed five per centum of the total assessed valuation of the taxable property in the city or town, except such debt as may be incurred in supplying the city or town with water and waterworks; and no loan for any purpose shall be made, except it be by ordinance, which shall be irrepealable until the indebtedness therein provided for shall be fully paid, specifying the purposes to which the funds to be raised shall be applied, and providing for the levying of a tax not exceeding in total amount for the entire indebtedness of the city and town (excepting such debt as may be incurred in supplying the city or town with waterworks) eight mills upon each dollar valuation of the taxable property within the city or town, sufficient to pay the annual interest and extinguish the principal of such debt within the time limited for the debt to run, which shall not be less than ten years, nor more than thirty years, and providing that said tax, when collected, shall only be applied to the purpose in said ordinance specified, until the indebtedness shall be paid and discharged; but no such debt shall be created except for supplying the city or town with water unless the question of incurring the same shall, at a regular election of officers for the city, be submitted to a vote of such qualified electors of the city or town as shall in the next preceding year have paid a property tax therein, and a majority of those voting upon the question by ballot deposited in a separate ballot box shall vote in favor of creating such debt. Seventh. (1) To lay out, establish, open, alter, widen,

extend, grade, pave, or otherwise improve streets, alleys, avenues, sidewalks, parks, and public grounds, and vacate the same, and to direct and regulate the planting of ornamental and shade trees in such streets, avenues, and public grounds. Id. 71. All cities and incorporated towns constructing such water or gas works are authorized to assess, from time to. time, in such manner as they shall deem equitable, upon each tenement or other place supplied with water or gas, such water or gas rents as may be agreed upon by the council or trustees, or upon each vacant lot in front of which the pipes commonly called 'street mains' are laid; but such vacant lots as do not take water from such 'street mains' shall not be assessed more than one half as much as may be assessed against the same amount of frontage of lots occupied by a one story building; and gas should be charged for by the foot, and then only to such as use it; and at the regular time of levying taxes in each year said city or town is hereby empowered to levy and cause to be collected, in addition to the other taxes authorized to be levied, a special tax on taxable property in said city or town, which tax, with the water or gas rent hereby authorized, shall be sufficient to pay the expenses of running, repairing, and operating such works; and if the right to build, maintain, and operate such works is granted to private individuals or incorporated companies by such cities or towns, and said cities or towns shall contract with said individuals or companies for a supply of water or gas for any purpose, such city or town shall levy each year and cause to be collected a special tax, as provided for above, sufficient to pay off such water or gas rents so agreed to be paid to said individuals or company, or company constructing said works; provided, however, that said last mentioned tax shall not exceed the sum of two mills on the dollar for any one year." Id. 75. Each municipal corporation may, by general ordinance,

prescribe the mode in which the charge on the respective owners of lots or lands, and on the lots or lands, shall be assessed and determined for the purposes authorized by this act; such charge, when assessed, shall be payable by the owner or owners, at the time of the assessment, personally, and also be a lien upon the respective lots or parcels of land from the time of the assessment. Such charges may be collected, and such lien enforced, by a proceeding in law or in equity in the district court of the proper county, either in the name of such corporation or of any person to whom it shall have directed payment to be made. In any such proceedings, where pleadings are required, it shall be sufficient to declare generally for work and labor done and materials furnished on the particular street, alley, or highway, or for water rent or gas used. Proceedings may be instituted against all owners, or any of them, to enforce the lien against all the lots or land, on each lot or parcel, or any number of them, embraced in any one assessment; but the judgment or decree shall be separately for the amount properly chargeable to each. Any proceedings may be served in the discretion of the court for the purpose of trial, review, or appeal. The first section cited has no application, for the reason, among others, that two thirds of the owners to be charged with the expense did not petition the board of trustees for the making of such improvement; at least the record does not disclose such fact, and the bill impliedly denies it. It hardly admits of argument, that the other provisions of the statute neither expressly nor by necessary implication grant the power to levy a special tax upon the property beneficially affected, to pay the expenses incurred in curbing or otherwise improving the streets of an incorporated town. This will appear evident when the question is examined in the light of the powers conferred by subsections 71 and 75, construed in connection with stat-

utory provisions regulating the taxing power. Subsection 71 authorizes and regulates the levy and collection of special assessments for the payment of water and gas rents; the reference therein to a power "to levy and cause to be collected, in addition to the other taxes authorized to be levied, a special tax on taxable property in said city or town, which tax, with the water and gas rent hereby authorized, shall be sufficient to pay the expenses of running, repairing, and operating such works," can not be construed as in any manner favoring a special assessment for the curbing and improvement of streets. But the seventy-fifth subsection appears to be the one upon which the town mainly relies for its authority to act in the premises. That only grants the power to fix by ordinance the manner "in which the charge on the respective owners of lots or lands, and on the lots and lands shall be assessed and determined for the purposes authorized by this act;" and the only question left for determination is, does the act authorize special assessments against the owners of the lots or against the lots themselves to pay the amount incurred by towns in curbing and improving of streets? No such authority, given in express words, can be found in the act. It is true that city councils and boards of trustees in towns, by the provisions of section 1622, are authorized "to lay out, establish, open, alter, widen, extend, grade, pave, or otherwise improve streets, alleys, avenues, sidewalks, parks, and public grounds;" also "to provide for and regulate crosswalks, and curbs and gutters," but it can not be seriously claimed that the conferring of such powers, either expressly or by necessary implication, grants the right to a city or town to levy a special assessment to pay the expenses of curbing a street, upon the lot abutting on the street where such curbing is done, nor upon the owner of such lot. From a careful reading of all the statutory provisions upon the subject we are of the opinion that

no such power has been conferred. We are otherwise supported in this conviction by the fact that the legislature has in nowise restricted the several cities and towns in the exercise of the extraordinary powers claimed, and it appears unreasonable that the legislature would intrust to these various municipal bodies unlimited power to confiscate the property of the citizen to pay the expense of improvements made upon adjoining streets, without as much as intimating, in the laws purporting to confer such power, one word of information or instruction as to the manner of its legitimate exercise. Such extraordinary powers should be clearly granted. Wright v. Chicago, 20 Ill. 252; Shackelton v. Guttenburg, 39 N. J. Law, 660.

The only question remaining is, had Zeiger a right to resort to a court of equity to restrain the sale of his lot and the forced collection of the assessment? We are clearly of the opinion that he had.

The suit was not instituted to correct errors or irregularities in the special assessment proceedings, nor to restrain the collection of the tax on account of illegality in the manner of enforcing its payment, but defendant in error in his bill distinctly alleges that the town had no rightful authority to make such assessment, and that its attempted forcible collection was wholly unwarranted; that, notwithstanding this total want of power, the town was proceeding to sell the lot, and thus cast a cloud upon his title, etc. The bill states enough to bring the case within the scope of well recognized principles of equity jurisdiction. It is well settled that, where public functionaries, individuals, or corporations have power to act, and are proceeding in the execution of that trust in an irregular or unlawful manner, courts of equity will not ordinarily interfere; but if they depart from the "power which the law has vested in them," or "if they assume to themselves a power over

JURISDICTION.

property which the law does not give them," they are not considered as acting within the scope of their authority, and such unauthorized acts may be enjoined. Courts of equity will also restrain the collection of a tax levied without authority of law. Frewin v. Lewis, 4 Mylne & C. 254; Union Trust Co. v. Weber, 96 Ill. 346; McClure v. Owens, 21 Iowa, 133. "When invoked, equity will entertain jurisdiction in all cases where the taxes have been levied without authority." Kimball v. Merchants S. L. & Trust Co., 89 Ill. 613; Town of Lebanon et al. v. Ohio & Mississippi Railway Co., 77 Ill. 539. "If the illegal taxes are assessed, and are threatened to be collected, the appropriate remedy is to restrain the collection by injunction." Toledo & Wabash Railroad Co. v. Lafayette, 22 Ind. 262; Foote v. Milwaukee, 18 Wis. 270. The equitable doctrine here announced has peculiar application to such states and territories as make tax deeds prima facie evidence of the regularity of all prior proceedings, including the levy of the taxes according to law. Such is the law of this territory. Section 2893, Comp. Laws, 1884. See 1 High Inj., sections 525, 526; Fowler v. City of St. Joseph, 37 Mo. 228; Jenkins v. Rock Co., 15 Wis. 11. It follows that the demurrer to the bill was properly overruled, and that the judgment below must be affirmed.

LEE, McFIE, and SEEDS, JJ., concur.