FRANKLIN COUNTY *v.* NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY,

AND

NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY *v.* FRANKLIN COUNTY.

1. TAXES. *Assessment.* The act of 1879, ch. 79, authorizing the tax-collectors to assess all property which, by mistake of law or facts, has not been assessed, applies to a case where there has been a failure to assess at all, and not to a case where the property has already been legally assessed, although not in every respect correctly.

Franklin County *v.* Railroad.

2. SAME. *Same. Jurisdiction of Circuit Court.* The circuit court has jurisdiction of an assessment and suit for taxes under the act of 1879, ch. 79, by appeal from the judgment of the justice, and by *certiorari* to bring up the proceedings before the county judge upon the assessment to test the question of the authority to assess.

3. SAME. *Same. Railroad property.* Under the State Constitution, the mode of ascertaining the value of particular kinds of property for taxation is left to the discretion of the Legislature, and that body may adopt a mode of assessment by assessors for the State at large, and such a mode for ascertaining the value of the franchise, roadway, rolling-stock, and other property not having a local *situs*, of a railroad company is eminently proper.

4. SAME. *Same. Franchise of railroad company.* The franchise of a railroad company for the purpose of taxation is a unit; so is the roadway, and so the rolling-stock; and the *situs* of the choses in action and personalty may be fixed by the Legislature, and treated like the franchise.

5. SAME. *Same. Same.* No better mode of determining the value of the portion of the road-way of a railroad company in any one county for taxation, and of the value of the franchise, rolling-stock, and other property without a *situs*, for that part of the road-way, has been devised than to ascertain the value of the whole road, the whole rolling-stock, and the whole of the non-local property, and apportioning the value for county taxation by the relative length of the road within the county to the whole length.

6. SAME. *Same. Board of Assessors.* The act of 1875, ch. 78, and the acts amendatory thereof, which provide for the appointment of a Board of State Assessors to value the property of railroad companies, and a revising board of examiners, are so far constitutional, notwithstanding some severable unconstitutional provisions in the earlier acts, that assessments under them acquiesced in by the railroad company by paying, and by a county by receiving, the county tax on the county's proportional part of the valuation, are binding, when it appears that the county has received a larger amount of taxes than it would have been entitled to upon a strictly legal assessment.

---

FROM FRANKLIN.

---

Appeal in error from the Circuit Court of Franklin county. J. J. WILLIAMS, J.

EAST & FOGG for Railroad Company.

JOHN R. BEASLEY and —— METCALF for Franklin County.

COOPER, J., delivered the opinion of the court.

The Legislature, by the act of 1875, ch. 78, undertook to declare the mode and manner of valuing the property of a railroad company for taxation. This act provided for the filing by each railroad company on or before the first of May of each year of certain schedules of its property, and the value thereof, for the appointment of a Board of State Assessors to assess the value of the property and franchises of each company, and a Board of Examiners, consisting of the Governor, Secretary of State and Treasurer, to revise the work of the assessors. The assessors, after having ascertained the total value of the property in the mode pointed out, were directed to deduct therefrom one thousand dollars, as well as the real cash value of the individual shares of each shareholder. The balance thus found was to be divided by the number of miles in the entire length of the road, and the result was to be the value per mile of the property of such company for the purpose of taxation. The product of this value multiplied by the number of miles in the State, was to constitute the sum to be taxed to such railroad for State purposes. The product of the value per mile multiplied by the number of miles or fractions thereof, lying and being in any county, was to constitute the

sum to be taxed for county purposes. Section 10 of this act reads thus: "That the property of any railroad company lying or being in any city or incorporated town, may be taxed for city purposes, upon a valuation thereof made upon the same basis as of the property belonging to a citizen tax-payer." The eleventh section of the act exempted from its provisions companies that would accept an amendment to their charter to pay annually for ten years one and one-half per cent on their gross receipts.

In the case of *Ellis* v. *Louisville & Nashville Railroad Company*, one opinion in which is reported in 8 Baxt., 530, and another opinion cited in the *Memphis & Charleston Railroad Company* v. *Gaines*, 3 Tenn. Ch., 606, the eleventh section of this act was held to be unconstitutional and void.

By the act of 1877, ch. 19, the act of 1875 was amended so as to take away from incorporated towns and cities the right conferred upon them by the tenth section to tax the property of the railroad companies lying within their boundaries, and to restrict the right of taxation of these corporations to the amounts apportioned to such towns by the railroad tax assessors. In the case of the *City of Chattanooga* v. *Railroad Company*, 7 Lea, 561, this amendment was held to be unconstitutional and void. It was also held that the provision of the act of 1875, directing the tax assessors to deduct from the aggregate value of the property of each company the cash value of the individual shares of the shareholders was equally unconstitutional and void. That provision was intended to be repealed

by the sixth section of the act of 1877, which is: "That the railroad tax assessors, in giving railroad companies exemptions under section 3 of the act passed March 20, 1875, sh ll deduct only one thousand dollars." And it appears from the testimony in the case now before us that the casn value of the shares was not deducted from the value of the property of the Nashville, Chattanooga & St. Louis Railway in the assessments made by the State assessors during the period in controversy.  The act of 1877, ch. 19, sec. 13, contains this further provision: "That nothing in this act shall prevent the authorities of the various counties and incorporated towns from assessing the value of all railroad property held in their respective counties and towns not included in the assessment herein provided for, or which may not be assessed by the assessors as herein provided."

The act of 1875 has been further amended by the acts of 1881, ch. 104, and 1882, ch. 16.  The latter act was passed to meet the objection to the acts of 1875 and 1877, pointed out by the decision in the case of the *City of Chattanooga* v. *Railroad Company*, that they practically prohibited counties and municipal corporations from taxing the real property of the company, lying inside their limits, at their actual value. It provides that the road-bed, rolling-stock, franchise, choses in action and personal property, having no actual *situs* of a railroad company, shall be known as its distributable property, and shall be valued by the assessors separate from the other property of the company, and the value thereof, after a deduction of

$1,000, is to be divided by the number of miles of the whole road, and the result shall be the value per mile of such distributable property of such company for the purpose of taxation. The product of this value multiplied by the number of miles in the State shall be the sum to. be taxed to such company upon such distributable property for State purposes. And the products of the value per mile multiplied by the number of miles or fractions thereof in each county and incorporated city or town through which the road passes, shall be the sums to be taxed upon such distributable property by said counties, towns and cities respectively. The depot buildings, yards, grounds and other property, real, personal and mixed, having an actual *situs*, the act further provides, shall be known as the localized property of such railroad, and shall be valued by the county assessors and city assessors of the several districts and wards in which said property is situated, in the same manner and upon the same principles as the assessment of similar property owned by individuals. The State, counties and towns shall be entitled to a tax upon the value of such property as in other cases.

The act of 1879, ch. 79, sec. 1, provides: "That all collectors of taxes are hereby made assessors to assess all property which, by mistake of law and fact, has not been assessed, and it is hereby made. the duty of such collectors in all cases whereby property has not been assessed, but on which taxes ought to be paid by law, to immediately assess the same, and pro- ceed to collect the taxes, and if the owner of the

property admits the liabilty of the property to taxation, but disputes the assessment, he may have a revaluation before the judge or chairman of the county court at any time within one month, and in such case the judge or chairman aforesaid may hear proof and fix the assessment or valuation, and this shall be final." In *Otis* v. *Boyd*, 8 Lea, 679, it was held that the power intended to be conferred by this act was simply to cure any omission of the assessors as to taxes accruing in the year for which the collector was elected, qualified and gave bond. The act directs the collector, as the mode of collecting the tax thus assessed, to obtain from any justice of the peace of his county a warrant or warrants for the taxes, which shall be served on the owner of the property, and returned before a justice of the county, jurisdiction being expressly conferred to try such cases, no matter what the amount, to be tried ,at once, either party to have the right of appeal to the circuit court, that court, and this court impliedly upon a further appeal, to hear the cases in preference to all others.

The Nashville, Chattanooga & St. Louis Railway is a corporation chartered by the State of Tennessee, whose road extends from Chattanooga, through Nashville, to the Mississippi river at Hickman, in the State of Kentucky. The property of the company, including its road-way and superstructure, has been assessed for taxation during the years 1875, 1876, 1877, 1878, 1879, 1880 and 1881, by the State board of assessors and examiners under the acts of 1875, 1877 and 1881. The road extends through the county of Franklin

about thirty-four miles. The value of the road within the county was ascertained in the mode prescribed by the acts referred to, and certified to the county authorities for taxation under the local rates, the taxes for county and school purposes assessed for the years mentioned respectively, and the taxes paid by the company.

In this situation of affairs, on November 29, 1881, the trustee of Franklin county, as tax collector, gave written notice to the Nashville, Chattanooga and St. Louis Railway that on the ninth of December following the company might appear before the county judge of Franklin counry, and make defense, if any it had, to an assessment of the property of the company in the county which he had made for taxation, under the act of 1879, for the years 1875 to 1881 inclusive, at the rate of $40,000 of valuation per mile. The company appeared and contested the right of the county to tax its property for those years, and also the value fixed in the assessment. The assessment of the county trustee, after stating the rates of county and school taxes for the years mentioned, was in these words: "My assessment for thirty-four miles of the Nashville, Chattanooga & St. Louis Railroad lying in Franklin county, I have assessed at the rate of forty thousand dollars per mile, which is based upon the best evidence I can get upon the same." The county judge, after hearing the evidence on both sides, fixed the valuation at twenty-five thousand dollars per mile for each of the years, and ordered the trustee, after allowing the company credit for the assessments paid

under the acts of 1875 and amending acts, to collect the taxes due the county for the years specified, upon the basis determined by the decision. The company prayed an appeal from the action of the county judge, which was refused, the judge being of opinion that no appeal would lie in such a case.

On January 21, 1882, the trustee sued out a warrant in the name of Franklin county against the railroad company for the aggregate of taxes due the county, upon the valuation of the county judge, which warrant was served and returned before the justice. Upon the hearing, the justice gave judgment for the balance due after deducting payments made under the State assessments, and the company appealed to the circuit court.

About the same time with the appeal, the railroad company brought the proceedings of the county judge in the matter of the assessment before the circuit court by writs of *certiorari* and *supersedeas*. That court overruled a motion to dismiss the petition for *certiorari*, and, by consent of parties, ordered the two cases to be consolidated, and heard together. Upon final hearing, the court was of opinion, and so adjudged, that the assessment of the county judge was lawfully made, and conclusive in the valuation made, and rendered judgment for the balance due, for the years 1880 and 1881, on the basis of that valuation after deducting the payments on the State assessments. The court, however, quashed the assessment for previous years. Both parties appealed in error.

The judgment of the circuit court in so far as it

quashed the assessments for the years preceding the election and qualification of the county trustee who commenced these proceedings, was in accordance with the decision of this court in *Otis* v. *Boyd*, 8 Lea, 679, and correct. No sufficient reason has been assigned for reviewing the decision cited. It is equally clear that the judgment below was correct in so far as it held that the circuit court had jurisdiction by appeal from the justice's judgment, and by the writ of *certiorari* to bring up the proceedings before the county judge, to hear and determine the question of the right of the county to tax the property of the railroad company for the years in controversy, for the act of 1879 provides for the institution of a suit in order to enable the parties to have this point judicially determined. And it was so held in *City of Chattanooga* v. *Railroad Company*, 7 Lea, 561.

The first position assumed by the railroad company is that the power delegated to the tax-collectors by the act of 1879, ch. 79, is special, "to assess all property which by mistake of law or facts has not been assessed." The statute repeats: "And it is hereby made the duty of such collectors, in all cases whereby (wherein) property has not been assessed, but on which taxes ought to be paid by law, to immediately assess the same, and proceed to collect the taxes." And it is very clear that the tax-collectors are bound by the limitations of the power, and cannot proceed to assess property which has already been assessed, merely because it may have been improperly assessed, or for less than its taxable value. The statute was intended to

apply to cases in which there had been a failure to assess at all.    The property of the railroad had been assessed under the act of 1875, and the amending acts, and the county had actually received the taxes due upon the assessment.   · The answer of the county is that the acts under which the assessment was made were unconstitutional and void, and the assessments void also.

The eleventh section of the act of 1875 has been, as we have seen, declared to be unconstitutional and void. So of part of the exemption or deduction clause of the third section of that act, which part was, however, repealed by the act of 1877.   So, of so much of the act of 1877, as prohibited municipal corporations from having the benefit of the value of the property within its limits, the tenth section of the act of 1875 expressly giving to such corporations the benefit of the valuation of such property.   And the question is whether the unconstitutionality of these parts of the acts mentioned avoids them *in toto.*

A part of a statute may be unconstitutional and void, and the residue valid:  *Tillman* v. *Cocke,* 9 Baxt. 429.   It is only where the residue is so dependent upon and connected with the void part that it cannot be presumed the Legislature would have passed the one without the other, that the whole statute is void: *Neely* v. *State,* 4 Baxt., 174, 185.   The eleventh section of the act of 1875 was an entirely independent provision from the residue of that act, for it simply proposed to exempt from the taxation contemplated such companies as would accept an amendment of their

charters embodying certain conditions. If no company accepted the proposition, or if the acceptance was invalid by reason of the unconstitutionality of the proposition, the residue of the act, which related exclusively to the assessment and taxation, would remain in full force. So, the exemption or deduction clause might be invalid or be repealed without affecting an assessment from which no such deduction was made. And the unconstitutionality of the prohibitory clauses of the act of 1877, left the unexceptionable provisions of the act of 1875 in full force. The fact therefore that these parts of the statutes have been declared void would not affect the residue of these acts if valid.

It was expressly admitted by the county, upon the trial of these causes, that assessments of the property of the railroad company were made during the years in controversy under the act of 1875 and amending acts, and that the county rates of taxation were levied upon the assessments and the taxes paid. A difficulty having arisen between the county and the company in relation to the rate of taxation, a suit was commenced upon the basis of this assessment, and finally decided by this court. It is clear, therefore, that the property in controversy was assessed during the years in question, and that the county of Franklin received all the taxes due it under the assessment. There was no failure to assess by mistake of law or fact, and the tax collector of Franklin county was not authorized to assess the property unless the previous assessments were absolutely void.

The act of 1875 requires each railroad company owning and operating a railroad in this State on or before the first day of May of each year to make out and file with the State Comptroller of the Treasury a complete schedule of all its property, real, personal or mixed, setting forth therein the length in miles or fraction thereof of its entire road-bed, switches and side-tracks, and showing how many miles or fractions thereof lie in the State, in each county of the State, and in each incorporated town, and the value of the whole and each part thereof; the total amount of capital stock; the number of engines and their respective values; the gross annual receipts; the number of cars of all character, their classes and value; the number of depot buildings and warehouses, and other buildings, in what county and incorporated town located, and the value of each, including the lands and lots on which the same are built; the value of all machine shops, stationary machinery and tools therein, and in what county and incorporated town located, including the land on which the same are built; all real, personal or mixed property belonging to the company within the State, not enumerated above, with its value. The act further required the assessors, in making the valuation of the property of the company, to look to the capital stock, the corporate property, the franchises and the gross receipts. To ascertain these facts, the assessors are given power to summon before them any person, to call for the books of the company, to administer oaths, and examine any person summoned touching any matter necessary to enable them to dis-

charge their duties. The subsequent acts of 1877 and 1881 specify some of their powers more particularly, but do not materially add to those thus conferred. The record shows that schedules were furnished by the railroad company as required, that the assessors did look to the matters specified, examine for themselves and ascertain the value of the property of the company as required. The property of the company in Franklin county consists of the roadway, thirty-four miles in length, and four depots, of so little value comparatively, that the county judge says he made no separate estimate for them. "I just considered," he says, "the road with the engines and fixtures to run it, worth $25,000 per mile." The estimate of the State assessors was $17,243.70, after including all the depots, warehouses, machine-shops, rolling-stock, and other property, real, personal and mixed, and taking into consideration the capital stock and the gross annual receipts. There cannot be a doubt as to the superior method of the State assessors in ascertaining the proximate value of the property of the company. The only question can be as to its validity under the Constitution of the State.

The general provision of the Constitution is that all property shall be taxed, with power in the Legislature to make certain exemptions not necessary to be noticed. "All property shall be taxed according to its value, that value to be ascertained in such manner as the Legislature shall direct, so that taxes shall be equal and uniform throughout the State": Const., Art. 2, sec. 28. The Legislature is clothed with plenary

power to prescribe the manner of assessing the value
of property for purposes of taxation, so that, in the
words of the same section of the Constitution: "No
one species of property from which a tax may be col-
lected, shall be taxed higher than any other species
of property of the same value." The usual mode
followed in this State to ascertain the value of prop-
erty for purposes of taxation has been by local as-
sessors appointed by the county or municipal authorities.
The assessors of property for municipal taxation are
often different from the assessors of the same prop-
erty for State and county taxation. There can be
no doubt, however, that the Legislature might adopt
a general mode of assessment by assessors for the
State at large, if deemed advisable. And such a
mode of ascertaining the value of certain peculiar
kinds of property, such as the franchise and roadway
of a railroad company, might be eminently advisable,
if the rights of towns and counties are properly
guarded.

The value of property for the purposes of taxation
shall "be ascertained in such manner as the Legis-
lature shall direct, so that the taxes shall be equal
and uniform throughout the State." That is to say,
"the mode of ascertainment, or means or agencies to
be adopted by the Legislature for such ascertainment,
is left to the discretion of that body": *City of Chat-
tanooga* v. *Railroad Company,* 7 Lea, 566. "Any
mode," says Judge Freeman in this case, "of ascer-
ing the value of the property may be prescribed that
tends to reach the result required, such as personal

inspection of the assessors, inquiring of parties familiar with such values, testimony of witnesses, the income received from such property, its capacity of yielding profits, its situation, convenience to markets, nearness or distance from great lines of transportation to such markets, and the like. In a word, all the elements that enter into the value of property of any and all kinds may be looked to by the most convenient, or by any means adapted to the end, in order to arrive at the result required. Any and all agencies serving the same purpose may be used or prescribed by the Legislature for the purpose indicated. In these matters the Legislature has the freedom of an unlimited discretion." It is obvious, therefore, that the Legislature might, by means of a general board of assessors, ascertain the value of the property of railroad companies for the purpose of State taxation. And it is even more obvious that such an assessment is much more likely to be equal, uniform and complete than an assessment in any other mode.

The Constitution, Article 2, section 29, provides: "The General Assembly shall have power to authorize the several counties and incorporated towns in this State to impose taxes for county and corporation purposes respectively, in such manner as shall be prescribed. by law; and all property shall be taxed according to its value upon the principles established in regard to State taxation." The act of January 16, 1871, repeats as a law the last clause of the paragraph: Rev. Code, sec. 491a. And the Code, sec. 490, is: "Taxes on property for county purposes shall

be imposed on the value thereof as the same is ascertained by the assessment for State taxation." If, therefore, the property of a railroad company is fully assessed by a valuation ascertained by a constitutional mode, and subjected to county taxation in the proper proportion for each county through which the road may run, or in a proportion not less than that to which the particular county is entitled, there can be no ground of complaint by the county.

The property of a railroad company for purposes of taxation consists of its realty, its local personalty, its rolling-stock, its choses in action, and its franchise. The franchise is the privilege conferred by the charter of incorporation, namely the right to exercise all the powers granted in the mode prescribed for the purpose of profit. It is a unit, not confined to any one county in which it may be exercised. The principal part of the franchise is the right to charge for freight and passengers, the charge being limited within a prescribed or reasonable rate for carriage in the proportion of the distance of transportation. Obviously, after ascertaining the value of the entire franchise in the State as a unit, no more approximate or just division of this value can be made for purposes of taxation than to allot it among the counties through which the track runs in the proportion of the length of track in the county to the entire length of road in the State. And this is what was done by the acts under consideration.

The choses in action of a corporation, its rolling-stock and personal property, according to the princi-

ples of the common law, have their *situs* at the domicil or place of business of the company: *Mayor and Aldermen of Gallatin* v. *Alexander*, 10 Lea, 475: *Mayor and Aldermen of Nashville* v. *Thomas*, 5 Cold., 607; Cooley on Taxation, 273. But the Legislature may change the *situs* of such property for purposes of taxation: *McLaughlin* v. *Chadwell*, 7 Heis., 389, 406; *Bedford* v. *Nashville*, 7 Heis., 409; *State Railroad Tax Cases*, 92 U. S., 575, 607; Cooley on Taxation, 274. And our statutes have for years provided that personal property shall be assessed in the district or ward in which it is, "but all stock in banks, bank associations or other corporations or joint stock companies shall be assessed in the place, town, ward, or district in which such bank, banking association, or corporations are located." The constitutionality of the statutes has been sustained in the cases cited above, as well as in other cases following them. The rolling-stock of a corporation, used in transporting passengers and freight over any and all parts of its line of road cannot be said to have a *situs* which would give a preference to any county through which the road may run over any other county in like situation. The choses in action of a railroad company created by the exercise of its franchises on every part of its track, may be equally said to be without a *situs* so as to give a preference. The Legislature might well treat them as the franchise itself, for or by the exercise of which they are created, and proportion the general valuation among the counties through which the road may run according to the length of road in each county.

The roadway itself of a railroad depends for its value upon the traffic of the company, and not merely upon the narrow strip of land appropriated for the use of the road, and the bars and cross-ties thereon. The value of the roadway at any given time is not the original cost, nor *a fortiori* its ultimate cost after years of expenditure in repairs and improvements. On the other hand, its value cannot be determined by ascertaining the value of the land included in the roadway assessed at the market price of adjacent lands, and adding the value of the cross-ties, rails and spikes. The value of land depends largely upon the use to which it can be put, and the character of the improvements upon it. The assessable value for taxation of a railroad track can only be determined by looking to the elements on which the financial condition of the company depends, its traffic as evidenced by the rolling-stock and gross earnings in connection with its capital stock. No local estimate of the fraction in one county of a railroad track running through several counties can be based upon sufficient data to make it at all reliable, unless indeed the local assessors are furnished with the means of estimating the whole road. It would be guess-work, as the county trustee fairly concedes his estimate of $40,000 a mile to have been in the case before us, or a vague approximation, as the county judge shows his valuation to have been. And it would be a most cumbersome and uselessly expensive and burdensome mode of assessment to give each local board of assessors the power to call for the necessary books, papers and evidence

for a correct general estimate. The most economical and accurate mode is the one adopted by the Legislature in the acts under consideration. No part of the mere roadway can be said to be more valuable than any other part, when considered as a track for the exercise of the franchises of the company as a common carrier. It is, like the franchise itself, a unit for the purposes intended, these purposes being not merely the use of the road for the profit of the company, but its use for the benefit of the public. Any interruption of that use is a public as well as a private calamity. "It may well be doubted," says the Supreme Court of the United States, "whether any better mode of determining the value of that portion of the track within any one county has been devised than to ascertain the value of the whole road, and apportion the value within the county by its relative length to the whole": *State Railroad Tax Cases*, 92 U. S., 608.

The real estate of a railroad company, other than its roadway, and its personal property having a local *situs*, may stand upon a different footing, for such property may be estimated and assessed like other similar property of the county, district or ward where it is situated. Whether it might not also be assessed by a general board of State assessors it is unnecessary to consider. For the acts under consideration as amended by the act of 1882, ch. 16, provide for the assessment of such property by the local assessors. That act, as we have seen, provides that the road-bed, rolling-stock, franchise, choses in action, and personal

property having no local *situs* of railroad companies shall be valued by the State board of assessors separate from the other property of the company, and the value thereof, after the constitutional deduction of $1,000, shall be proportioned among the counties according to the relative length of the road in the particular county. It further provides that the depot buildings, yards, grounds, and other property, real, personal and mixed, having an actual *situs*, shall be valued by the county and city assessors of the several districts and wards in which said property is situated, in the same manner, and upon the same principles as the assessment of similar property owned by individuals.

It is true the original acts under which the county assessment in question was made, required the depot buildings, grounds, and other property having a local *situs*, to be assessed with the road-bed, rolling-stock, franchise, and other property having no local *situs*, and the aggregate valuation to be proportioned among the counties. And that was what was done in this case. If there was any error in this it was an error against the company, of which it might have complained. For the assessment included the property having a local *situs* in other counties, there being, as we have seen, no such property of any value in Franklin county. That county could not complain after having accepted its benefit: Cooley Const. Law, 219. The railroad company could not recover the money paid by it with knowledge of the facts: *Dickens* v. *Jones*, 6 Yer., 483; *Cauvin* v. *Mayor of Nashville*, 2 Baxt., 453. And the county had no ground of com-

plaint, having thereby received more than it was entitled to under a strictly legal assessment. The property of the company within the limits of Franklin county was therefore assessed for the year in controversy, and the tax collector had no authority to again assess it under the act of 1879.

The judgment of the circuit court will be reversed, and judgment rendered here in favor of the railroad company, and against the county for all costs.

JOHN M. BRIGHT, Sp. J., delivered the following opinion:

The following is a substantial statement of the facts: On the 29th of November, 1881, the trustee of Franklin county assessed for taxation, for county purposes, thirty-four miles of the Nashville, Chattanooga & St. Louis railroad in said county, at $40,000 per mile for each of the years from 1875 to 1881, inclusive, and gave notice to the railroad company to appear before the judge of the county court of Franklin county, and make defense against said assessment made by him, under the act of 1879, in relation to such assessments.

The railroad appeared by attorney, before the county judge and contested both the right to make the assessment, as well as the amount of it.

The county judge, after hearing evidence, fixed the assessment at $25,000 per mile for each of the years aforesaid, and ordered the trustee, after giving the railroad credit for taxes paid by it to the county for the same years, under the assessments of the State

board of assessors for railroad taxes, to proceed by warrant to collect the balance of tax before a justice of Franklin county.

From this assessment and order of the county judge the railroad prayed an appeal, which was refused on the ground 'that the assessment was final under the act of 1879.

The county then sued the railroad before a justice of the county for taxes due under the assessment amounting to $29,125. The justice allowed credits to the railroad for taxes paid to the county under the assessments made by the State board of assessors amounting to $18,080.52, and gave judgment for the balance in favor of the county for $11,244.48, from which judgment the railroad appealed to the circuit court, which appeal was granted.

In the meantime, the railroad petitioned the circuit judge for writs of *certiorari* and *supersedeas*, which were granted, and all the proceedings before the county judge were brought before the circuit court. The causes were consolidated and heard together by consent. The county, by attorney, moved to dismiss the petition of the railroad for *certiorari* and *supersedeas*, which motion was overruled, and the causes were heard by his Honor, the circuit judge, who gave judgment against the railroad for $3,108.77, for taxes due to the county for the years 1880 and 1881, at the taxable value of $25,000 per mile; but he quashed the assessments for the years 1875, 1876, 1877, 1878 and 1879, because, in his opinion, the trustee had no authority to assess the same, as they were due anterior to the

commencement of the term of his office.    From which judgment both parties appealed.

The first assignment of error is that the circuit judge erred in overruling the motion of the county to dismiss the petition for *certiorari* and *supersedeas.* We think that there was no error in the ruling of the circuit judge.

The petition raised the jurisdiction question of the county judge to assess the property of the railroad, as well as the amount of the assessment, under the act of 1879, ch. 79, which denied the right of appeal. The writ of *certiorari* was a proper remedy to bring up the jurisdictional question from the inferior to the superior tribunal for revision:    Const., 1870, Art. 6, sec. 10;   Code, secs. 3123, 3124;   cases cited, 1 Mill. Dig., under head of *Certiorari;*  Hilliard on Tax, 453, sec. 27 and 454, subsec. 30;   Cooley on Tax, 332. The effect of the appeal from the judgment of the justice was to transfer the whole case to the circuit court, and place it for trial on its merits:  1 Mill. Dig., 173, cases cited.

The next assignment of error is that the circuit judge erred in quashing the assessments for the years 1875, 1876, 1877, 1878 and 1879, because, it is insisted that the trustee had authority under the act of 1879, ch. 79, sec. 1, to assess all property which by mistake of law or fact had not been assessed.

This court held in the case of *Otis* v. *Boyd,* 8 Lea, 679, that this statute conferred no authority on collectors to assess and collect taxes due for years anterior to their election and qualification to office.

The case was well considered on a petition for rehearing, and we see no reason at this time for reviewing this decision. We, therefore, hold that there was no error in the ruling of the circuit judge on this point.

The next question which arises, is the vital one of the controversy. The attorneys for the county insist that the act of 1875, and amendments of 1877 and 1881, ch. 104, are unconstitutional and void, and that the assessments made thereunder by the State board of assessors are also void, and that the county is entitled to a new assessment at the rate of $40,000 per mile. The attorney for the railroad insists that if the act and amendments complained of, are unconstitutional at all, they are only so *pro tanto*, and not *in toto*, and that even if the assessment of the State board of assessors were unconstitutional, the county is in no situation to obtain the relief sought.

The constitutional provisions are: "That all property shall be taxed according to its value, that value to be ascertained in such manner as the Legislature shall direct, so that taxes shall be equal and uniform throughout the State."

"The General Assembly shall have power to authorize the several counties and incorporated towns in this State to impose taxes for county and corporation purposes respectively, in such manner as shall be prescribed by law; and all property shall be taxed according to the principles established in regard to State taxation."

The principles deduced from these provisions are: First, taxation acording to value. Second, taxation according to the rule of equality. Third, taxation

35—VOL. 12.

according to the rule of uniformity. The manner of ascertaining the value is remitted to the Legislature under the prescribed limitations.

Let us test the validity of the assessments in controversy by the State board of assessors, under the act of 1875, and the amendments of 1877 and 1881. The act of 1875, ch. 78, provided for the filing by each railroad company schedules of its property and the value thereof; for the appointment of a- State board of assessors · to assess the value of the property and franchises of each company, and a board of examiners, consisting of the Governor, Secretary of State and Treasurer, to revise the work of the assessors. In section 3, act 1875, it is enacted that: "In making such valuation they shall have in view and look to the capital stock, the corporate property, the franchises of each company, as well as the gross receipts, and the individual stock of each shareholder. *   * Having ascertained in the manner indicated herein, the character and total value of all the property, wherever situated, of any railroad company, and after having deducted from the aggregate value one . thousand dollars, as well as the real cash value of the individual shares, they shall divide the same by the number of miles in the entire length of the road, and the result shall be the value per mile of the property of such company for the purpose of taxation, and the value per mile of any such railroad, as ascertained above, shall be multiplied by the number of miles in the State, and the product thereof shall be the sum to be taxed to such railroad company for State purposes;

and the value per mile, as ascertained, shall be multiplied by the number of miles or fractions thereof lying and being in any county, and the product shall be the sum to be taxed for county purposes; and having ascertained the several sums to be taxed, they shall certify the same to the Comptroller, together with the facts."

By section 10, of this act it is provided: "That the property of any railroad company lying or being in any city or incorporated town, may be taxed for city purposes upon a valuation thereof made upon the same basis as of the property belonging to a citizen tax-payer."

The 11th section of this act exempting from its provisions companies which would accept an amendment to their charters to pay annually for ten years one and one-half per cent on their gross receipts, has been declared to be unconstitutional: *Ellis* v. *Louisville & Nashville Railroad Company*, 8 Baxt., 530; *Memphis & Charleston Railroad Company* v. *Gaines*, 3 Tenn. Ch., 606.

By the act of 1877, ch. 19, the act of 1875 was so amended as to take away from incorporated towns and cities the right conferred upon them by the 10th section, to tax the property of the railroad lying within their boundaries, on the same basis as the tax on property of the tax-paying citizen, and to restrict the right of the taxation of these corporations to the amounts apportioned to such towns by the railroad assessors.

In the case of the *City of Chattanooga* v. *Railroad*

*Company,* 7 Lea, 561, this amendment was held to be unconstitutional and void.

It was also held in that case, that the provision of the act of 1875, directing the tax assessors to deduct from the aggregate value of the property of each company the cash value of the individual shares of the shareholders, was equally unconstitutional and void.

That provision was intended to be repealed by the sixth section of the act of 1877, which is: "That the railroad tax assessors, in giving railroad companies exemptions under section 3 of the act passed March 20, 1875, shall deduct only one thousand dollars."

The act of 1877, ch. 19, sec. 13, contains this further provision: "That nothing in this act shall prevent the authorities of the various counties and incorporated towns from assessing the value of all railroad property held in their respective counties and towns not included in the assessment herein provided for, or which may not be assessed by the assessors as herein provided."

The act of 1881, ch. 104, amending the act of 1875, was intended only to prescribe additional requirements for making the schedules of railroad officers and imposing new duties on railroad assessors, and to fix penalties for failures to comply with the requirements of the statute.

After noticing the pruning of the act of 1875 by judicial decision and various eliminations by amendments, let us see if it retains any provision repugnant to the Constitution.

The Nashville, Chattanooga & St. Louis Railroad

is a corporation with unlimited power to acquire and hold vast property, real, personal and mixed, not necessary for the operating purposes of the road.

As a general principle, independent of any constitutional provision, property of this nature should be taxed like the property of private individuals: Hilliard on Taxation, 276, sec. 26.

The corporation may become the owner of money, bonds, choses in action, and also of work beasts, carts, wagons and other personalty; large bodies of farming, mineral and timbered lands, and of mining and manufacturing establishments.

All these different descriptions of property are made assessable in the aggregate with the necessary operating property and franchise of the railroad by the mandatory provision of section 3, act of 1875, prescribing the duty of the State board of assessors. The act recites: "Having ascertained, in the manner indicated herein, the character and total value of all the property, wherever situated, of any railroad company, and having deducted from the aggregate value one thousand dollars, as well as the real cash value of the individual shares, they shall divide the same by the number of miles," etc.

The language "total value of all the property, wherever situated," could not be more comprehensive. That part of this section exempting the cash value of the individual shares has been declared unconstitutional as before stated: 7 Lea, 561. Section 6 of the act of 1877, amends section 3 of the act of 1875, so as to require the railroad assessors to exempt only one thousand dollars. But this did not

change the manner of assessing the aggregate corporate property.

Section 8 of the act of 1877, provides for a continuance of the mode of assessment under the act of 1875. This section is as follows; "That all railroads in the State shall, by the first day of May, 1877, and each successive two years thereafter, furnish the schedule and reports required by the act of March 20, 1875; and the railroad tax assessors hereafter to be appointed by the Governer, shall assess all railroads in the State, and where any railroads have not been assessed for taxation under the first ten sections of the act of March 20, 1875, by reason of having accepted and complied with the provisions of the 11th section of said act, or for any other cause, the railroad tax assessors, when they meet, shall assess the railroad as aforesaid for the years 1875 and 1876, and also all railroads in the State for the years 1877 and 18' 5."

This section is but a substantial re-enactment of section 3, as well as other sections of the act of 1875, and it must share the fate of section 3. Then if all the property of the railroad is to be assessed together, and the aggregate amount is to be distributed along the entire length of the railroad, and then to be apportioned to the counties through which the road may pass, for the levy of taxes for county purposes, according to the number of miles lying within such counties, what would be the result?

Suppose the railroad should build extensive hotels and manufacturing establishments in Franklin county, and that by the apportionment to the county they

should be valued at $50,000, when the same property, if owned by individuals, would be valued at $100,000, it is clear that the county would lose $50,000 of taxable property, which would be distributed to other counties.

Suppose, again, that the railroad at its chief office in the city of Nashville had money, bonds, choses in action, and personal and real property, and that by the apportionment they should be valued at $200,000, when the same property, if owned by a private citizen, would be valued at $500,000, it is clear that the county of Davidson would lose $300,000 of taxable property, which would be distributed to other counties.

It is true that the county of Franklin, by the process of distribution, might receive as much, or even more, than it lost, yet this would not cure the vicious mode of assessment which has been held to be repugnant to the uniformity provision of the Constitution, and that part of the act, which authorized the assessment in such manner has been declared void: 7 Lea, 561.

Should it be insisted that the county suffered no injury in the assessment and apportionment actually made, it may be replied that the constitutionality of the act is not to be tested by the fairness of the assessment made under it.  In *Stewart* v. *Palmer*, 74 N. Y., 186, Mr. Justice Earl held: "The constitutional validity of the law is to be tested not by what has been done under it, but what may, by its authority, be done."  See also *Railroad Tax Cases; County of San Mateo* v. *Southern Pacific Railroad Company*, opinions of Justice Field and Judge Sawyer.

But it is insisted that though these acts may be

void in part, they are not void *in toto,* and the assessments made under them by the State board of assessors is valid. It is true that a part of an act may be unconstitutional and void and the residue valid : *Tillman* v. *Cook,* 9 Baxt., 429.

It is only when the residue is so dependent upon and connected with the void part that it cannot be presumed that the Legislature would have passed the one without the other, that the whole act is void: *Neeley* v. *State,* 4 Baxt., 174, 185.

The 11th section of the act of 1875 has been, as we have seen, declared unconstitutional and void; so that part of the exemption or deduction clause of the 3d section of the same act, which part, however, was repealed by the act of 1877; so, that much of the act of 1877, as prohibited municipal corporations from having the benefit of the value of property within their corporate limits, the 10th section of the act of 1875 giving such corporations the benefit of the value of such property; and we have now held that so much of the 3d section of this act as provides for the assessment of all the property of the railroad, wherever situated, and the apportionment thereof to the counties according to the estimated value of the railroad within their respective limits is unconstitutional and void.

After these eliminations of the act of 1875 and amendments, does enough of it remain to carry out the main design of the Legislature?

The Legislature, by authority of the Constitution, conferred the right of taxation by the counties and incorporated towns in the State.

The franchises of the railroads and the road-beds, superstructures and operating property are different in their nature and character from the great mass of property held by private citizens. From necessity the railroads would have to pass through some of the counties and towns which would be interested with the State in the taxation of this exceptional character of property. To reach the end in view the Legislature adopted what may be called an apportionment rule of assessment, to be exercised through the agency of the State board of assessors. That it was the design of the Legislature to adopt an apportionment rule of assessment, within proper constitutional limits, is apparent from the act of April 12, 1882, amending the act of 1875, classifying the localized and distributable property of the railroad and applying the apportionment rule to the latter. We express no opinion as to the constitutionality of the act of 1882, but only refer to it as evincing the design on the part of the Legislature to apply the apportionment rule to railroad property as far as it can be done under the Constitution.

This court, in declaring the act of 1875 and amendment of 1877 unconstitutional so far as they sought to assess the localized with the distributable property, turned the localized property loose for taxation by the county and municipal corporations under the general revenue laws of the State, leaving the distributable property to be assessed under the apportionment rule. The act of 1875 and amendments were still operative on the officers of the railroads to furnish sched-

ules of their property; they still conferred power on the Governor to appoint assessors and made provision for their pay; they still clothed them with power to make all assessments which were not declared to be void; they still continued the board of examiners to revise the work of the assessors, and they still required the Comptroller to forward the tax lists to the tax collectors for the collection of taxes for State purposes, and to the counties and towns for their portions of the distributable property.

We do not, therefore, hold the whole of the act of 1875 and amendments of 1877, to be unconstitutional and void, but void in the particulars before indicated.

It is the opinion of Judges Deaderick, Cooper and Turney, that the Legislature intended, in the 3d section of the act of 1875, to embrace only the property of the road for assessment and apportionment which was necessary for its operating purposes.

If such was the intention of the Legislature, then this section of the act of 1875 would not be unconstitutional, while the assessments made under it by the State assesors would be illegal, because they embraced property of the road not necessary for its operating purposes.

The choses in action of a corporation and its personal property, by a fiction of the common law have their *situs* at the domicil or place of business of the company: *Mayor and Aldermen of Nashville* v. *Thomas*, 5 Cold., 607; *Mayor and Aldermen of Gallatin* v. *Alexander*, 10 Lea, 475; Cooley on Taxation, 273.

But the Legislature may change the *situs* of such property for purposes of taxation : *McLaughlin* v. *Chadwell*, 7 Heis., 389, 406; *Bedford* v. *Nashville*, 7 Heis., 409; *State Railroad Tax Cases*, 92 U. S., 575, 607; Cooley on Taxation, 274.

But while the Legislature may change the *situs* of personal property for purposes of taxation, yet when the *situs* is fixed it must be taxed like the same property of the private citizen, unless it be of that character of personal property which is necessary to and inseverable from, the operation of the road.

The objection to the change of *situs* of the personalty of the railroad in this case, was that it was all thrown together into an undistinguished mass with other property of the company, so that the mules, horses, money, bonds and other personalty, not necessary for the operation of the road, were assessed in a different mode from the assessment of the same kind of property owned by the private citizen.

Justice Field, in the case of *San Mateo County* v. *Southern Pacific Railroad Company*, before alluded to, holds : "That uniformity in taxing implies equality in the burden of taxation, and this equality of burden cannot exist without uniformity in the mode of assessment as well as the rate of taxation."

While these are sound general principles, there are other principles applicable to the operating property of a railroad. There is certainly a conflict of authority in relation to the movable property of a railroad: Hilliard on Taxation, p. 286, sec. 52.

The better opinion seems to be that a railroad

proper, by fiction of law, is regarded as a *unit*—a corpus—and the operating fixtures 'and facilities, but members of the same body. .

Mr. Hilliard, on page 276, section 26, draws the distinction, that property owned, but not used for operating purposes, should be taxed like property of private individuals. Citing *Toledo* v. *Lafayette,* 22 Ind., 262.

On page 264, section 12, the same author defines the necessary operating property of the road to be that which is "necessary to effect the purposes of their incorporation, but not that which constitutes convenient (though not necessary), appendages of the road and its business." On a question of exempting the property of a railroad from taxation in its charter, he says that "property necessary to the *construction* and *use* of a railroad is exempt from taxation, but not if only necessary to the profits." Citing *Railroad* v. *Burks*, 6 Barr, 70. See also, *Day* v. *Joiner*, 5 Baxt., 441; Pierce on Railroad Law, 51.

In illustration of this doctrine, it might be convenient and profitable to have a railroad hotel for the accommodation of passengers, but it would not be necessary; it might be convenient to have timbered lands for fuel and cross-ties, but they would not be necessary; and it might be convenient to own coal banks and iron works for the manufacture of railroad iron and locomotives, but they would not be necessary. Hence, in some of the States the road and its, franchise are regarded as an entire thing not subject to "coercive severance and dislocation": *Appleton* v. *Ernst*, 3 Bush., 648.

The franchise of the road and all its necessary op-
·erating parts should be one and inseparable for taxing
purposes.   If Franklin county had assessed the fraction
of the road within its limits without the franchise, the
road-bed would have been only of ·nominal value, unfit
for agricultural or other purposes; the magnificent tun-
nel in the county would have been as valueless as a
cave in the mountain, and the iron bars would have
only been worth their metal value.

If the franchise and operating property ·of the road
were to be estimated by the county assessors with the
section of the road in their county, then it would be
necessary to estimate the value of the entire franchise
and operating property to ascertain the part to which
the county would be entitled.   The county assessor not
having access to, or· not being in the possession of
the necessary information, might make uncertain and
arbitrary estimates based on the expense and construc-
tion accounts, and "general property of the road," as
illustrated by the estimates of the officers in Franklin
county.   The trustee estimated the value of the road
in that county at $40,000 per mile;   the county judge
on the trial estimated the value at $25,000 per mile;
while the State board of assessors fixed it at about
$17,000 per mile; another county through which it
passes might have fixed it at $50,000; and still an-
·other might have fixed it at $75,000 per mile.

And if every county through which the road passes
should assess the value of the rolling-stock at their
full value, it would be difficult to estimate the cumu-·
lative values of the assessments.   It will be seen at

once that such variable and cumulative estimates would violate both the uniformity and equality provisions of the Constitution.

In the case of *City of St. Joseph* v. *Kansas City, St. Joseph & Council Bluff Railroad Company,* in note (*a*) Hilliard on Tax, 286, Judge Wagner said: "The rolling-stock of the company is in a constant state of transit, and has no more real local existence in one county than another. A county through whose whole length it runs might well think that it had as much right to tax it as a city that it passed through but a mile or two at most, but both would not have the right to levy tax, for that would be double taxation upon the same property. The machinery by which the road is operated is constantly passing from one to the other, the entire road, and to save all cavil and dispute in respect to it, it was perfectly competent for the Legislature to say that it should become a part of the road itself and become property the same as the road, and for purposes of taxation it should be equally distributed through the counties, cities or town; through which it passes, in proportion to its length in those respective localities": 1 Centr. Law Jour., No. 16, p. 184.

Hence, the necessity and propriety of a State board of assessors to ascertain and fix the value at a uniform rate, and to guard against the injustice of double or cumulative taxation.

The process of ascertaining the value of the franchise and distributable property by the mileage system is not more objectionable than to ascertain the value

of a tract of land by the acreage system. The former adopts the mile as its unit of value, the latter the acre as its unit of value, and by multiplying the units the general product will be reached.

This mode would approach a uniformity of value, perhaps, better than any other mode.

"It may well be doubted," says the Supreme Court of the United States, "whether any better mode of determining the value of that portion of the track within any one county has been devised than to ascertain the value of the whole road, and apportion the value within the county by its relative length to the whole": *State Railroad Tax Cases*, 92 U. S., 608.

It is insisted by the railroad company that the assessment, by the trustee and judge of the county court of Franklin county, did not fall within the conditions of the act of 1879, ch. 79, sec. 1, which provides: "That all collectors of taxes are hereby made assessors to assess all property, which, by mistake of law or facts, has not been assessed," etc.

We think the power conferred in this clause is special and limited, and that it was intended to apply to the assessment of property which had from any cause been omitted to be assessed, and not to the re-assessment of property which had been previously assessed, even though it might have been illegally assessed. We do not think that it was the intention of the Legislature to confer authority on the tax collectors to revise all the previous tax lists and determine the legality or illegality of assessments of an indefinite number of former years.

Therefore, the reassessments of the railroad property by the trustee and county judge, were outside the authority of the act and were illegal and void.

The proof shows that all the property of the railroad from Nashville to Chattanooga, including depots, lands, shops, bonds, money and choses in action, were thrown together and valued by the State board of assessors, and then divided by the number of miles in the road apportioned amongst the counties and municipalities through which the road passed.

Such assessments, for reasons already given, would be unconstitutional and void.

But it is insisted by the road, that although these assessments may be void, yet they were made under the forms of law, and that the county of Franklin having accepted the benefit of the assessments, will be estopped from denying their validity. We hold such to be the law: *Haynes* v. *Powell,* 1 Lea, 347; *Hansford* v. *Barbour,* 3 A. K. Marshall, 515.

It is further insisted that the county has received the full amount of taxes to which it was entitled and has sustained no injury, therefore it has no right to complain of the assessment, even if made under an unconstitutional act. The proof abundantly shows that the assessments were made by the State board of assessors after careful investigation, and that their assessments were approved by the revising board of assessors, and that in the assessments the valuable depots and shops, and other real estate of the railroad at Chattanooga and Nashville, and at other places, were valued with all the other property and distributed along the

line of the road, and the county received its proportional part.

We think, therefore, that the county was not injured by the assessments, and it is in no condition to complain of the unconstitutional law: *Hansford* v. *Barbour*, 3 A. K. Marshall, 515; *DeJarnett* v. *Haynes*, 23 Miss., 600; 3 Rhode Island, 64; Cooley on Const. Lim., 5th Ed., 197.

The judgment of the circuit court will be reversed, and judgment rendered here in favor of the railroad company and against the county, for all costs.